UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE NO.: 1:15-CR-10-TLS |
| DEWAYNE LEWIS | |

**OPINION AND ORDER**

This matter is before the Court on the Government's Supplemental Motion Regarding Violence Enhancement [ECF No. 508]. For the reasons set forth below, the Government's Motion is denied.

In the Draft PSR, the United States Probation Officer recommended that the Defendant's offense level be increased by two levels pursuant to § 2D1.1(b)(2) because "the defendant used violence, made a credible threat to use violence, or directed the use of violence." Draft PSR ¶ 42, ECF No. 445. The Defendant objected to the two-level increase to his offense level, *see* Def.'s Objs. 14, ECF No. 448, and the Court sustained his objection, Mar. 11, 2020 Op. & Order 39–40, ECF No. 480.

After the Court ruled on the parties' objections, the United States Probation Officer filed a Final Presentence Investigation Report (PSR) [ECF No. 485] in which no offense level increase pursuant to § 2D1.1(b)(2) was recommended. *See* PSR ¶¶ 40–49, ECF No. 485. The Government objected to the omission of a violence enhancement and requested a hearing. Second Addendum to the PSR 1, ECF No. 490. A telephonic/video status conference was held on June 12, 2020, during which the Government indicated that it intended to file a motion demonstrating why a violence enhancement is appropriate. The Government then filed its Supplemental Motion Regarding Violence Enhancement [ECF No. 508] in which it argues that

the evidence admitted during trial is sufficient to warrant applying the enhancement and increasing the Defendant's offense level

Section 2D1.1(b)(2) of the Sentencing Guidelines instructs sentencing courts to increase the base offense level by two levels "[i]f the defendant used violence, made a credible threat to use violence, or directed the use of violence." U.S. Sentencing Guidelines Manual § 2D1.1(b)(2) (U.S. Sentencing Comm'n 2018). The Government argues that the violence enhancement should be applied because Trial Exhibits 39 and 40 demonstrate that the Defendant had knowledge of certain violent conduct that occurred prior to his arrest.

Nothing contained in Trial Exhibits 39 and 40 indicates that the Defendant directly engaged in or aided any violent conduct. Rather, the Government relies on § 1B1.3 of the Sentencing Guidelines, which permits the Court to consider, in the case of jointly undertaken criminal activity, the conduct of others to apply sentencing enhancements. The Government argues that Trial Exhibits 39 and 40 clearly demonstrate that the Defendant learned of violent conduct committed by other participants in the drug trafficking network and that the Defendant's actual knowledge of these events warrants the application of § 2D1.1(b)(2) because it exceeds that section's requirement that the relevant conduct be reasonably foreseeable. *See* Gov't's Suppl. Mot. 4–5, ECF No. 508 ("Reasonable foreseeability is all that is required for the violence enhancement under relevant conduct principles.")

The Government, however, misconstrues the requirements of § 1B1.3. The violent conduct of others will be attributed to the Defendant only if it was "(i) within the scope of the jointly undertaken criminal activity; (ii) in furtherance of that criminal activity; and (iii) reasonably foreseeable in connection with that criminal activity." U.S. Sentencing Guidelines Manual § 1B1.3 (U.S. Sentencing Comm'n 2018). Thus, the Government is incorrect; "mere

foreseeability of another's conduct is not sufficient to bring that conduct within the scope of a defendant's jointly undertaken criminal activity." *United States v. Salem*, 597 F.3d 877, 885 (7th Cir. 2010); *see also United States v. Davison*, 761 F.3d 683, 686 (7th Cir. 2014) ("The government and the district judge stop with foreseeability, and that's not enough."). Even "[k]nowledge is not sufficient to establish the scope of the jointly undertaken criminal activity." *Id.* at 889 ("Even if the defendant was perfectly aware of the breadth of the scheme, if he was not part of all of it, his sentence could not be based on more than the part to which he had agreed." (quoting *United States v. Thomas*, 199 F.3d 950, 953 (7th Cir. 1999))).

To apply § 1B1.3(a)(1)(B), "the district court must make a preliminary determination of the scope of the criminal activity the defendant agreed to jointly undertake." *Id.* at 886 (citing *United States v. Fox*, 548 F.3d 523, 531–32 (7th Cir. 2008); *Thomas*, 199 F.3d at 953; U.S. Sentencing Guidelines Manual § 1B1.3 cmt. n.2). If the conduct at issue falls within the scope of the agreed upon jointly undertaken criminal activity, "[t]hen the court must make a two-part determination of whether the conduct of others was *both* in furtherance of that joint criminal activity and reasonably foreseeable to the defendant in connection with the joint criminal activity." *Id.* (citing *Fox*, 548 F.3d at 532; *Thomas*, 199 F.3d at 953; U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B)).

In its prior Opinion and Order, the Court determined the scope of the criminal activity the Defendant agreed to jointly undertake and concluded:

> [T]hat the DTO constitutes a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others. The PSR and the evidence introduced at trial indicates that the Defendant is intimately familiar with the jointly undertaken criminal activity, including the source of drugs, the methods of packaging and delivery, the quantity of drugs and money trafficked, the individuals involved, and the premises utilized. Based on the Defendant's intimate knowledge of the DTO and his conduct throughout his years of involvement with the DTO, the Court can determine the scope of the criminal

3

>activity. This scope includes Bates's regular receipt of controlled substances, specifically marijuana, cocaine, and heroin, from Mexico that were fronted to the Defendant for distribution. It also includes the Defendant selling the controlled substances and returning the drug proceeds to Bates, or to someone else involved in the DTO, for shipment to Mexico. Also included is the management of the supply chain, as the drugs and drug proceeds trafficked by the Defendant were processed through various shipment and storage premises. Finally, the scope includes the Defendant's actions to assist Bates, namely helping him escape to Mexico, recovering cocaine and drug proceeds from Lepper's pole barn, and collecting drug proceeds from the other DTO dealers.

Op. & Order 10–11 (internal citations omitted). Trial Exhibits 39 and 40 demonstrate that the Defendant learned of certain violent conduct that occurred among members of the greater trafficking network. However, this conduct falls outside of the scope of the above-described criminal activity the Defendant agreed to jointly undertake.

The violent conduct described in Trial Exhibits 39 and 40 was not carried out to obtain or protect controlled substances, nor was it carried out to subdue a competitor. The violent conduct at issue, assuming it actually occurred, was carried out by members of the trafficking network to gain or maintain power within the organization. The politicking of a multi-national drug trafficking network falls outside the scope of the criminal activity the Defendant agreed to jointly undertake. Fraudulent conduct committed by a company's board members would not implicate that same company's uninvolved entry-level employees; likewise, violent conduct committed or ordered by the higher ups of a drug trafficking organization do not implicate uninvolved street level dealers.[1] As such, applying the § 2D1.1(b)(2) enhancement based on the violent conduct described in Trial Exhibits 39 and 40 would be improper.

---

[1] The Government seemingly argues that the violent conduct falls within the scope of the agreed upon joint conduct because it occurred due to a money dispute "and the primary purpose of any drug conspiracy is to make money from illegal drug distribution." Gov't's Mot. 4. However, if a defendant charged with drug trafficking could be sentenced for any conduct that somewhat relates to making money, the application of § 1B1.3(a)(1)(B) would have no limits. This is contrary to Seventh Circuit caselaw, which generally imposes limits on the application of § 1B1.3(a)(1)(B). For example, in *United States v. Davison*, the Seventh Circuit explained that if the defendant "neither did nor agreed to do

4

The Government, in addition to its joint conduct argument, also contends that "information provided by Bates and the proffer information from Lewis" shows that the Defendant was directly involved in violent conduct. Gov't's Mot. 3 n.1. The statements referenced by the Government are not before the Court; therefore, the Court cannot determine whether they support the application of a § 2D1.1(b)(2) enhancement.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Government's Supplemental Motion Regarding Violence Enhancement [ECF No. 508].

SO ORDERED on January 13, 2021.

s/ Theresa L. Springmann<br>
JUDGE THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT

---

anything to promote sales by the other gang members, their sales (which together with his sales exceeded the 8.4 kilogram limit for a sentence reduction) were not relevant conduct of his, even if foreseeable." 761 F.3d at 686. This confirms that the actions of other members of a drug trafficking organization do not automatically constitute agreed upon joint conduct simply because they relate to money.

5